APPROVED FINANCE CO., VICTORY MORTGAGE CORPORA-
TION, MAE STERN T/A SHERIDAN MORTGAGE CO.,
AND RAITT ENTERPRISES, INC., A NEW JERSEY COR-
PORATION, PLAINTIFFS-APPELLANTS, v. RICHARD F.
SCHAUB, COMMISSIONER, DEPARTMENT OF BANKING,
STATE OF NEW JERSEY, AND HIS SUCCESSORS, DE-
FENDANT-RESPONDENT.

MAJESTIC FINANCE & DISCOUNT CORP., MODERN ACCEP-
TANCE CORP., ROYAL AMERICAN INVESTMENT CORP.,
PRINCETON INVESTMENT COMPANY, INC., PROVI-
DENT INVESTMENT CORP., NEW JERSEY BANK, N. A.
AND FRANKLIN BANK, A BANKING CORPORATION OF
NEW JERSEY, PLAINTIFFS-APPELLANTS, v. RICHARD
F. SCHAUB, COMMISSIONER, DEPARTMENT OF BANK-
ING, STATE OF NEW JERSEY, DEFENDANT-RESPON-
DENT.

APPROVED FINANCE CO., VICTORY MORTGAGE CORPORATION AND MAE STERN T/A SHERIDAN MORTGAGE CO., PLAINTIFFS-APPELLANTS, v. RICHARD F. SCHAUB, COMMISSIONER DEPARTMENT OF BANKING, STATE OF NEW JERSEY, AND HIS SUCCESSORS, DEFENDANT-RESPONDENT.

MAJESTIC FINANCE & DISCOUNT CORP., MODERN ACCEPTANCE CORP., ROYAL AMERICAN INVESTMENT CORP., PRINCETON INVESTMENT COMPANY, INC., PROVIDENT INVESTMENT CORP., AND BRUNSWICK MORTGAGE COMPANY, PLAINTIFFS-APPELLANTS, v. RICHARD F. SCHAUB, COMMISSIONER, DEPARTMENT OF BANKING, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1975—Decided November 13, 1975.

Before Judges CARTON, CRAHAY and HANDLER.

*Mr. Harvey L. Weiss* argued the cause for appellants in A–676–73; A–3608–73 (*Messrs. Stern & Weiss,* attorneys).

*Mr. Robert S. Fisher and Mr. Steven S. Radin,* argued the cause for appellants in A–1255–73 (*Messrs. Sills, Beck,*

*Cummis, Radin & Tischman,* attorneys; *Mr. Gerald Span* on the brief).

*Mr. Steven S. Radin* argued the cause for appellants in A–3727–73 (*Messrs Sills, Beck, Cummis, Radin & Tischman,* attorneys; *Mr. Gerald Span* on the brief).

*Mr. Michael E. Goldman,* Deputy Attorney General argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

PER CURIAM. These are consolidated appeals challenging the promulgation of rules of the Department of Banking dealing with the regulation of secondary mortgage loan licensees.

Plaintiffs Majestic Finance & Discount Corp., Modern Acceptance Corp., Royal American Investment Corp., Princeton Investment Company, Inc. and Provident Investment Corp., all engaged in the secondary mortgage loan business in the State of New Jersey pursuant to licenses granted them by the New Jersey Department of Banking in accordance with the Secondary Mortgage Loan Act (1970), *N. J. S. A.* 17:11A–34 *et seq.* Plaintiffs New Jersey Bank, N.A. and Franklin Bank are banks organized and existing under the laws of the United States (12 *U. S. C. A.* § 1 *et seq.*) and the State of New Jersey (*N. J. S. A.* 17:9A–1 *et seq.*), respectively, with their principal offices and branch offices located within the State of New Jersey.

The regulations attacked by plaintiffs are *N. J. A. C.* 3:18–6.1, 6.2 and 6.3. *N. J. A. C.* 3:18–6.1 prohibits "solicitation," *viz*:

A licensee is hereby prohibited from soliciting secondary mortgage loans for and on behalf of some other lender and any such solicitation of secondary mortgage loans by a licensee shall be deemed to be in violation of *N. J. S. A.* 17:11A–56k.

The solicitation of secondary mortgage loans is thus defined:

"Solicit" means and includes any and all types of advertising or any other form of communication with prospective borrowers which results in the origination of secondary mortgage loans in the name of a licensee which, by prior agreement and in the normal course of business, are subsequently negotiated to a lender.

"Lender" means and includes a secondary mortgage loan licensee or any in or out-of-state bank or other financial institution which, by prior agreement and in the normal course of business, acquires individual secondary mortgage loans which have been solicited by a licensee. [*N. J. A. C.* 3:18-6.2]

These restrictions do not apply "to the bulk assignment of any or all of a licensee's secondary mortgage loan portfolio as collateral security for a *bona fide* commercial loan." *N. J. A. C.* 3:18-6.3.

It is argued by plaintiffs that these regulations are beyond the Commissioner's statutory rule-making power and invalid.

Under the act the Commissioner is given broad authority to

* * *[m]ake, enforce, alter, modify, amend, or repeal rules and regulations to effectuate the purposes of this act and to establish and maintain ethical, fair, equitable and honest business standards for persons who are subject to any provision of this act. [*N. J. S. A.* 17:11A-54(a)]

The legislation itself directly prohibits "solicitation" by a licensed secondary mortgage loan licensee. A licensee cannot

* * * [s]olicit business, directly or indirectly, for any other licensee, lender, retail seller of personal property or services or for any other person, whether in this or any other state. [*N. J. S. A.* 17:11A-46(k)]

*N. J. A. C.* 3:18-6.1 essentially reiterates the statutory prohibition. It obviously comports with the Legislature's delegation of broad rule-making powers to the Commissioner to "effectuate the purposes" of the act and to prescribe business

standards governing persons subject to the act. *N. J. S. A.* 17:11A–54(a).

Plaintiffs make a more pointed argument that the administrative definition of the term "lender" contained in the definitional section of the regulation expands the scope of the act and is therefore *ultra vires.* The regulation by its terms applies to the solicitation by licensees of secondary mortgage loans on behalf of an "in or out-of-state bank or other financial institution." *N. J. A. C.* 3:18–6.2. Plaintiffs state that the Legislature, in enacting the revised act, was concerned only with out-of-state banks. The fallacy in this position, however, emerges from a comparison of the regulation with *N. J. S. A.* 17:11A–46(k), the terms of which clearly prohibit solicitation by a licensee for a lender "in this or any other state."

It is further contended that the definition of "solicitation" as set forth in the new regulations is an invalid exercise of the Commissioner's rule-making power because it embraces activities which do not conform to the intent of the Legislature.

The purpose of the Secondary Mortgage Loan Act (1970), *N. J. S. A.* 17:11A–34 *et seq.,* was to provide strong remedial measures for the secondary mortgage loan business. In *Crescent Investment Co. v. Comm'r of Banking & Insur. of N. J.,* 103 *N. J. Super.* 11 (Ch. Div. 1968), the court, in analyzing the original, predecessor legislation in this field, the Secondary Mortgage Loan Act (1965), *N. J. S. A.* 17:11A–1 *et seq.,* which was repealed by *N. J. S. A.* 17:11A–63 and replaced by the current legislation, observed:

Each of the provisions attacked in plaintiff's complaint must be read in light of the overall purpose and objective of the Secondary Mortgage Loan Act. A review of the relevant legislative history discloses that various institutions of lending, both local and out-of-state, had been engaging in loan transactions with New Jersey residents in which misleading advertising was taking place and unconscionable amounts of interest as well as exorbitant fees were being exacted. These loans were secured by secondary mortgages on real

estate located in New Jersey. It was to protect New Jersey residents from this misleading advertising and exorbitant charges and fees that the Secondary Mortgage Loan Act was enacted. This legislation is very restrictive regarding fees to be charged, safeguards around the transaction itself, location of the place of business, keeping books and records, and the like. In short, this legislation was a remedial measure designed to give the State a very tight-fisted control over the secondary mortgage loan business. [at 18]

 The over-zealous and improper solicitation of second mortgages for undisclosed lenders was a major concern of the Real Estate Commission during the investigation which preceded the enactment of the first Secondary Mortgage Loan Act. The Commission's report states:

Our investigation has led us to conclude that the secondary mortgage operator in New Jersey in many cases is not the lender, but more often acts as a broker immediately assigning or discounting second mortgage paper to a third party. [*New Jersey Real Estate Comm'n, Second Mortgage Investigative Report to Governor Richard J. Hughes* (January 5, 1965)]

The resultant legislation sought to protect the public against false and fraudulent advertising and to insure against exorbitant interest rates. *Oxford Consumer Dis. Co. of No. Phila. v. Stefanelli,* 102 *N. J. Super.* 549 (App. Div. 1968), suppl. 104 *N. J. Super.* 512 (App. Div. 1969), mod. and aff'd 55 *N. J.* 489 (1970) ; *Crescent Investment Co. v. Comm'r of Banking & Insur. of N. J., supra.* The regulatory definition of "solicitation" furthers these objectives because it prohibits advertising or communication which results in secondary mortgage loans by a nominal licensee which, by prearrangement and in the normal course of business, are transferred to a third party. See *e. g.,* Hearings, Department of Banking, Division of Banking, Consumer Credit Bureau (March 22, 1973). If licensees were permitted to solicit secondary mortgage loans in name only, and by prior agreement negotiate or transfer such loans to an undisclosed "lender," this might well entail the payment of a higher interest rate than a borrower might have to pay

if he obtained the loan directly. Furthermore, the advertising of such loans within this framework of doing business is deceptive and misleading because the true lender is not revealed. We conclude, therefore, that the regulatory definition of "solicitation," on its face, is reasonably drawn to deal with an evil envisaged by the Legislature and is not invalid as beyond the intent of the underlying legislation.

█ It is asserted that the phrase, "by prior agreement and in the normal course of business," found in the definition of a "lender" in *N. J. A. C.* 3:18–6.2, is vague. This regulation, however, is drawn to reach and prohibit transactions and business dealings which, if unchecked, would engender the untoward practices and consequences which the Secondary Mortgage Loan Act was designed to remedy. It would ostensibly prevent licensees from soliciting secondary mortgage loans on behalf of another lender. The regulation purports to reach situations where such other lender regularly and customarily, by prearrangement, acquires the mortgage loan from the licensee. In this context the argument is made, however, that the banks, dealing with certain licensees, do not treat the applications from plaintiff licensees as mortgage loans; rather than relying on the value of the underlying security, the banks, it is said, rely on the financial condition of the borrower. See, Hearings, *supra.* It suffices to point out that we are not called upon in this litigation to determine whether the asserted manner of conducting business by and between any of the parties here would offend these regulations. Plaintiffs, we emphasize, are here challenging the regulations on their face and not as applied to them.

█ Another argument made by plaintiffs is that these regulations restrict the powers conferred on state and national banks by the New Jersey Banking Act of 1948 and the National Banking Act, and, therefore, are void because in violation of the legislative policy contained in *N. J. S. A.* 17:11A–61 and, with respect to national banks, contrary to the Supremacy Clause of the Federal Constitution.

A bank has the power to deal in second mortgages when the bank holds the first mortgage (*N. J. S. A.* 17:9A–65) or when the loan for which the mortgage property is security would be warranted independent of the mortgaged property. *N. J. S. A.* 17:9A–70, subd. B. The regulations do not trench upon the essential statutory powers of state or national banks. These institutions remain able to transact second mortgages by dealing directly with the borrower. *N. J. S. A.* 17:11A–61. In addition, *N. J. A. C.* 3:18–6.3 specifically allows licensees to obtain commercial loans from banks by using as collateral security the bulk assignment of any or all of the licensee's secondary mortgage loan portfolio. Moreover, the regulation does not· prohibit a licensee from selling or pledging a note secured by a second mortgage to a bank in order to obtain credit for itself through normal commercial channels. It only prohibits a licensee from acting, in a sense, as a broker for a bank by soliciting business for the bank's account.

We conclude, therefore, that the regulations promulgated by the Commissioner, *N. J. A. C.* 3:18–6.1 and 6.2 and 6.3, are valid. In consequence, the appeal involving these regulations is affirmed.

In the second consolidated appeal plaintiffs initially challenged the validity of *N. J. A. C.* 3:18–9.1, 9.2 and 9.3. This regulation, which was adopted on July 22, 1974, increased the maximum interest rate chargeable on a secondary mortgage loan from 15% to 17%, except that any secondary mortgage loan which was solicited on behalf of another lender could·not be made at higher than a 15% interest rate. On March 13, 1975 the regulation was amended. Sections 9.2 and 9.3 were repealed, and section 9.1 reduced the maximum interest rate chargeable on secondary mortgage loans to 15%, thereby eliminating the differential or special rate for "solicited" loans. Since the prior regulation was never enforced and has now been eliminated, we consider the issues raised ·by plaintiffs as moot. Accordingly, this appeal is dismissed.